**Jaburg & Wilk, P.C.**
1850 N. Central Avenue, Suite 1200
Phoenix, AZ 85004
602.248.1000

Alden A. Thomas (031900)
aat@jaburgwilk.com
Ian M. Fischer (026239)
imf@jaburgwilk.com
Michelle L. Hogan (031490)
mlh@jaburgwilk.com
Corrinne R. Viola (033386)
crv@jaburgwilk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vafa Ghaemmaghami, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Dignity Health,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vafa Ghaemmaghami ("Dr. Ghaemmaghami"), for his Complaint against Defendant Dignity Health ("Dignity"), alleges as follows:

## INTRODUCTION

1. Dignity is a healthcare organization that employs over 10,000 active physicians.

2. In Arizona, Dignity operates eight area acute care hospitals, 14 imaging centers, and a number of specialty care centers and medical groups (Dignity's "Arizona Operations").

3. Dr. Ghaemmaghami is employed by Dignity to provide healthcare services to patients in Arizona.

JABURG WILK
LAW FIRM

1    4.    With Dr. Ghaemmaghami, for its Arizona Operations, Dignity employs
2  or previously employed other individuals to provide healthcare services to patients in
3  Arizona (Dignity's "Physicians").

4    5.    Dr. Ghaemmaghami and Dignity's other Physicians provide critical
5  healthcare to Dignity's patients in Arizona.

6    6.    Although Dignity has a policy that recognizes the need for
7  Dr. Ghaemmaghami and Dignity's other Physicians to have time away from work,
8  Dignity does not provide its Physicians with time away from work.

9    7.    Any time away a Dignity Physician might take has to be made up at
10  another time and could negatively impact the Physician's compensation.

11    8.    As detailed herein, Dignity: (1) failed to provide its Physicians paid
12  sick time mandated by Arizona law; and (2) failed to provide paid time away
13  required by its contracts with its Physicians.

14    9.    Even during the COVID-19 pandemic, Dignity refused to grant paid
15  sick time to its Physicians who contracted COVID-19.

16    10.    Also as detailed herein, Dignity has required its Physicians to work
17  without compensation.

18    11.    Dignity has threatened sanctions against its Physicians who objected to
19  working without compensation.

20    **PARTIES**

21    12.    Dr. Ghaemmaghami is, and was at all relevant times, an individual
22  residing in Maricopa County in the State of Arizona.

23    13.    Dignity is a California nonprofit corporation with its principal place of
24  business in San Francisco, California.

25    14.    Dignity controls several hospitals and medical groups in Arizona.

26    15.    Dignity operates those hospitals and medical groups under trade names
27  registered with the Arizona Corporation Commission.

28

2

**JABURG WILK**
LAW FIRM

JABURG WILK
LAW FIRM

## JURISDICTION AND VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of costs and interest, and Dr. Ghaemmaghami and Dignity are citizens of different states.

17.     This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interest, and one or more members of the class, including Dr. Ghaemmaghami, is a citizen of a different state than Dignity.

18.     Venue is proper pursuant to 28 U.S.C. § 1391 because Dignity operates hospitals and medical groups in Arizona and a substantial part of the events giving rise to the claims occurred in this District.

## BACKGROUND

19.     Dr. Ghaemmaghami is a board-certified medical doctor that specializes in trauma surgery.

20.     On February 12, 2018, Dignity hired Dr. Ghaemmaghami to provide healthcare services to its patients.

21.     Dignity assigned Dr. Ghaemmaghami to the Dignity Health Medical Group, Chandler General Surgery and Trauma.

### Compensation

22.     Dignity based part of Dr. Ghaemmaghami's compensation on completing an annual minimum number of primary and back-up shifts ("On-Call Pay").

23.     Primary call shifts required Dr. Ghaemmaghami to remain on-site at a hospital for a continuous 24-hour period and provide professional medical services to emergency patients as needed.

24.     Dignity also based part of Dr. Ghaemmaghami's compensation on generating worked Relative Value Units ("wRVUs") during call shifts and during clinical-based procedures ("Productivity Compensation").

25.     wRVUs means the number of "Relative Value Units" of professional medical services personally performed by a physician or healthcare employee for patients which are posted to Dignity's computerized billing system during the fiscal year.

26.     "Relative Value Units" is defined by Dignity to mean the professional relative value units for CPT and HCPCS codes, as published on an annual basis in the Federal Register to establish the Medicare physician fee schedule, without being adjusted by the geographic practice cost index.

27.     Essentially, each medical procedure has a certain number of Relative Value Units assigned to it.

28.     Dignity uses wRVUs to measure the productivity of its Physicians.

29.     Dignity required Dr. Ghaemmaghami to generate a minimum level of wRVUs to receive his Productivity Compensation.

30.     Part of Dr. Ghaemmaghami's compensation from Dignity is also based on service/patient satisfaction, quality, and economic sustainability and access ("Value Compensation").

31.     To receive Value Compensation, Dr. Ghaemmaghami had to generate a minimum level of wRVUs.

32.     Upon information and belief, if Dr. Ghaemmaghami had not generated the minimum level of wRVUs, Dignity would have placed him on a performance correction plan.

33.     Each year, Dignity sets a target wRVU for Dr. Ghaemmaghami to fulfill.

34.     Dignity pays Dr. Ghaemmaghami 80% of his On-Call Pay and target Productivity Compensation in bi-weekly paychecks.

35.     Every six months, Dr. Ghaemmaghami's pay is subject to a true-up.

36.     If Dr. Ghaemmaghami is satisfying the targeted wRVUs on an annualized basis, Dignity will pay him the 20% holdback and a portion of his Value Compensation for the past six months at the true-up period.

37.     If Dr. Ghaemmaghami is not satisfying the targeted wRVUs on an annualized basis, Dignity will not pay him the 20% holdback.

**The Contract**

38.     When Dignity hired Dr. Ghaemmaghami, it required him to sign an employment contract (the "Contract").

39.     The Contract provides:

**2. Compensation**

**2.1 Compensation and benefits**
(b) Physician shall be entitled to participate in Employer's employee benefit plans offered to similarly situated employees, subject to the eligibility and other terms and conditions of such plans as such plans may be modified and amended from time to time.

40.     The Contract entitled Dr. Ghaemmaghami to receive leave benefits memorialized in the Southwest Division Policy – Physician Time Away ("PTA Policy").

41.     The PTA Policy states, "Dignity Health facilities in Arizona recognize physicians' needs for time away from work by providing benefits-eligible physicians with paid time away (PTA) to use for activities such as taking care of personal business, vacations, leisure time, family needs, short term illnesses, doctor/dental appointments and special holidays."

42.     The PTA Policy grants physicians "24 days of personal time away at the beginning of each calendar year to use throughout the year" ("PTA").

43.     Assuming an eight-hour workday, 24 days equates to 192 hours of PTA.

44. Dr. Ghaemmaghami's employment portal reflects that Dignity allocated him 192 hours of PTA.

45. Dr. Ghaemmaghami's 192 hours PTA also appears on his paystubs.

46. Despite granting Dr. Ghaemmaghami 192 hours of PTA annually, Dignity's representatives told Dr. Ghaemmaghami that he did not have or could not use PTA.

47. Rather, Dignity's representatives claimed that Dr. Ghaemmaghami can take unlimited leave, but must "make-up" any time he missed.

48. For example, if Dr. Ghaemmaghami took leave during a scheduled call shift, Dignity required him to "make-up" the call shift on a later date.

49. Instead of actually getting time away from work, Dignity's requirement that Dr. Ghaemmaghami "make-up" any leave resulted in Dignity simply moving Dr. Ghaemmaghami's shifts around.

50. If Dr. Ghaemmaghami took leave during clinical-based hours, Dignity did not grant him any pro rata wRVUs for the time he missed.

51. Dr. Ghaemmaghami had to work more hours and to produce sufficient wRVUs after taking any leave.

52. As a result, Dignity did not pay Dr. Ghaemmaghami for his leave.

53. Dignity's Physician Compensation Plan contradicts its PTA Policy by conditioning the PTA benefit on either losing anticipated income or requiring a Physician to work "make-up" shifts.

54. Dignity's Physician Compensation Plan states, "The base pay rate and at-risk [20% holdback] *may* be impacted if your missed time impacted your productivity."

55. Dignity's Physician Compensation Plan also states, "As with all Physicians, those in a shift based model are eligible for PTA and CME" but "[i]t should be noted that these do not count toward the fulfillment of a shift or partial shift."

56.    Upon information and belief, Dr. Ghaemmaghami had to work in excess of 40 hours in a week to offset the wRVUs he did not generate while on leave.

57.    Dr. Ghaemmaghami's damages for denied PTA benefits exceed $100,000.

**Dignity Did Not Comply with Arizona's Paid Sick Leave Statute**

58.    Arizona's statute governing paid sick leave is A.R.S. § 23-372 ("Paid Sick Leave Statute").

59.    The Paid Sick Leave Statute requires employers to allow their employees to accrue "earned paid sick time" at a rate of one hour for every 30 hours worked, at minimum.

60.    "Earned paid sick time" means the employee is compensated at the same hourly rate "with the same benefits … as the employee normally earns during hours worked …." A.R.S. § 23-371(D).

61.    An employee may use paid sick time for any qualifying reason, including when the employee is suffering from a physical illness or health condition. A.R.S. § 23-373(A)(1).

62.    Paid sick time must be carried over to the following year or, alternatively, an employer "may pay an employee for unused earned paid sick time at the end of a year and provide the employee with an amount of earned paid sick time that meets or exceeds the requirements of this article that is available for the employee's immediate use at the beginning of the subsequent year." A.R.S. § 23-371(D)(4).

63.    The Paid Sick Leave Statute applies to Dignity.

64.    As such, Arizona law requires Dignity to provide earned paid sick time to all employees.

65.    Since 2016, Dignity's representatives claimed that its Physicians were not entitled to paid sick leave.

7

JABURG WILK

LAW FIRM

66.    Dignity has not permitted its Physicians to use PTA as paid sick leave.

67.    Dignity has claimed that its Physicians were not entitled to PTA.

68.    But even had Dignity permitted its Physicians to use PTA as paid sick leave, such a policy would not have complied with the Paid Sick Leave Statute for at least four reasons.

69.    First, the PTA policy states that PTA "is not owed or accrued."

70.    Under the Paid Sick Leave Statute, Dignity owes employees paid sick time, and employees are entitled to accrue paid sick time.

71.    Second, the PTA policy states, "Physicians' will use PTA during the year at their discretion with prior approval from the Chairman …."

72.    The Paid Sick Leave Statute does not always require employees to obtain pre-approval from the employer before taking paid sick time.  A.R.S. § 23-373(D).

73.    Third, the PTA policy states, the Chairman may deny requests for PTA "when the business needs of the department/unit are such that time off cannot be granted."

74.    The Paid Sick Leave Statute does not permit employers to deny employees' requests to use paid sick time due to "business needs."

75.    Fourth, the PTA policy states, "Any unused PTA at the end of the calendar year will be lost."

76.    The Paid Sick Leave Statute requires unused paid sick time to be "carried over to the following year" or paid out to an employee.

77.    Dr. Ghaemmaghami has taken leave on scheduled workdays for illness.

78.    Tracy Rios, Dr. Ghaemmaghami's Clinic Manager, claimed that Dr. Ghaemmaghami was not entitled to any paid leave for illness.

79.    For example, if Dr. Ghaemmaghami took leave for illness during a scheduled call shift, Dignity required him to "make-up" the call shift on a later date.

80.    As a result, Dignity did not pay Dr. Ghaemmaghami for his leave.

1    81.    If Dr. Ghaemmaghami took leave for illness during clinical-based

2    hours, Dignity did not grant him any pro rata wRVUs for the time he missed due to

3    illness.

4    82.    As a result, Dignity did not pay Dr. Ghaemmaghami for his leave.

5    83.    Dr. Ghaemmaghami's damages for unpaid sick leave exceed $100,000.

6                          **Dignity's Misrepresentations**

7    84.    For years, Dignity has made misrepresentations to Dr. Ghaemmaghami

8    and other Physicians regarding their rights under the PTA Policy and the Paid Sick

9    Leave Statute.

10    85.    Dignity representatives claimed that Dignity does not afford Physicians

11    formal sick or paid leave. Instead, Physicians must find coverage for leave and make

12    up missed work.

13    86.    Dignity representatives claimed that if a Physician needed leave for

14    cancer treatments, such time would be unpaid.

15    87.    Dignity representatives claimed that the system benefited Physicians

16    because they received "unlimited" unpaid time off.

17    88.    Dignity representatives told at least one Physician that the Physician

18    was "lucky" to have a working spouse because the Physician would be paid nothing

19    during parental leave.

20                              **Unpaid Wages**

21    89.    As described above, Dignity compensates Dr. Ghaemmaghami for On-

22    Call Pay and Productivity Compensation.

23    90.    Dignity imposes a minimum number of wRVUs that Dr.

24    Ghaemmaghami must generate each year.

25    91.    Dignity also imposes a cap on the number of wRVUs that it would

26    compensate Dr. Ghaemmaghami for generating.

27

28

JABURG WILK

LAW FIRM

92. Dignity separately imposes maximum compensation that Dr. Ghaemmaghami may receive.

93. Dignity compensates Dr. Ghaemmaghami for his clinical hours (not call shifts) based on wRVUs ("Clinical Hours").

94. For several years, Dr. Ghaemmaghami has generated more wRVUs than the wRVU cap.

95. Once Dr. Ghaemmaghami hit the cap, Dignity would not compensate him for any additional wRVUs.

96. Dr. Ghaemmaghami has continued working Clinical Hours without compensation after he hit the cap.

97. Given that Dignity would not compensate Physicians for Clinical Hours after hitting the cap, Physicians asked Dignity about stopping work for all remaining Clinical Hours in the year.

98. Upon information and belief, Dignity does not employ sufficient Physicians to permit Physicians to stop working Clinical Hours once the Physicians have hit the wRVU cap.

99. At least one of Dignity's representatives has stated that Dignity will report Physicians to the Arizona Medical Board for patient abandonment if any Physician stops working Clinical Hours after hitting their wRVU cap.

100. When Physicians raise the unpaid Clinical Hours issue, Dignity's representatives claim they are attempting to resolve the issue.

101. However, the issue has remained unresolved for several years.

102. Dr. Ghaemmaghami has worked Clinical Hours without compensation out of fear that Dignity will report him to the Arizona Medical Board if he stops working.

. . .

. . .

. . .

10

**CLASS ACTION ALLEGATIONS**

103.    Dignity makes its Physicians sign standard employment contracts, like the one Dr. Ghaemmaghami signed.

104.    The contracts Dignity has with all its Physicians contain the same grant of employee benefits that is in section 2 of Dr. Ghaemmaghami's contract.

105.    Upon information and belief, Dignity purports to grant each of its Physicians 192 hours of annual PTA.

106.    Physicians' pay stubs reflect that they have the annual PTA Dignity purports to grant.

107.    Upon information belief, Dignity representatives told its Physicians that they could not use or did not have the benefit of 192 hours of annual PTA.

108.    Upon information and belief, Dignity pays the Physicians Productivity Compensation.

109.    Upon information and belief, Dignity did not or refused to grant Physicians pro rata wRVUs for any leave.

110.    Upon information and belief, the Physicians had to work in excess of 40 hours in a week to offset any leave.

111.    Dignity did not give any paid sick leave to the Physicians.

112.    Upon information and belief, Dignity imposed ceilings on the total compensation that its Physicians could receive.

113.    Upon information and belief, Dignity required its Physicians to continue working after they had hit either the wRVU cap or the compensation ceiling.

114.    Upon information and belief, Dignity did not compensate its Physicians for working in excess of the wRVU or compensation ceiling.

115.    Upon information and belief, the Physicians have incurred damages that exceed $5,000,000.

11

**The Unpaid Leave Class**

116. Dr. Ghaemmaghami brings this action on behalf of himself and the following **Unpaid Leave Class:** All Physicians who are or were employed by Dignity at any time from the earliest that the statute of limitation permits until a class is certified.

117. Dignity makes its Physicians sign standard employment contracts, like the one Dr. Ghaemmaghami signed.

118. The contracts Dignity has with all its Physicians contain the same grant of employee benefits that is in section 2 of Dr. Ghaemmaghami's contract.

119. Upon information and belief, Dignity purports to grant each of its Physicians 192 hours of annual PTA.

120. Physicians' pay stubs reflect that they have the annual PTA Dignity purports to grant.

121. Dignity representatives told its Physicians that they could not use or did not have the benefit of annual PTA that Dignity purported to grant to them.

122. If a Physician took leave for any reason during a scheduled call shift, Dignity required the Physician to "make-up" the call shift on a later date.

123. As with Dr. Ghaemmaghami, Dignity pays the Physicians Productivity Compensation.

124. Dignity did not or refused to grant Physicians pro rata wRVUs for any leave.

125. Dignity's Physicians had to work in excess of 40 hours in a week to offset any leave.

126. Dignity did not give any paid sick leave to the Physicians, as is required under Arizona law.

127. Dignity also did not permit its Physicians to use PTA.

1    128.    Upon information and belief, Dignity employs, and has employed, at

2    least 100 Physicians within any applicable statute of limitations.  The exact number

3    of Physicians can be readily determined by documents produced by Dignity.

4    129.    Common questions of law and fact exist as to Dr. Ghaemmaghami and

5    the Unpaid Leave Class Members, including, without limitation:

6    A.    Whether Dignity failed to provide Physicians paid sick leave

7    pursuant to the Paid Sick Leave Statute;

8    B.    Whether Dignity failed to roll over or pay out accrued, but

9    unused, paid sick leave at the end of each calendar year;

10    C.    Whether Dignity violated the Paid Sick Leave Statute;

11    D.    Whether, through the foregoing practice, Dignity caused and

12    will continue to cause harm to Physicians;

13    E.    Whether Dignity did not permit Physicians to use PTA;

14    F.    Whether, through the foregoing practice, Dignity breached its

15    contracts with its Physicians;

16    G.    Whether, through the foregoing practice, Dignity breached the

17    implied covenant of good faith and fair dealing;

18    H.    Whether the Physicians are entitled to injunctive relief;

19    I.    Whether Dignity's conduct warrants an award of damages.

20    130.    Dr. Ghaemmaghami has the same interests in this matter as all other

21    members of the class and his claims are typical of those of all members of the class.

22    Dr. Ghaemmaghami and all Physicians have been harmed by Dignity's common

23    course of conduct as outlined herein.  The harm to each Physician was caused by

24    Dignity's wrongful conduct.

25    131.    Dr. Ghaemmaghami is committed to pursuing this action and has

26    retained competent class counsel.  Dr. Ghaemmaghami will fairly and adequately

27    represent the interests of the Physicians. Neither Dr. Ghaemmaghami nor counsel

28    have any interests adverse to those of other members of the class.

JABURG WILK

LAW FIRM

132.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Dignity's actions are generally applicable to the Physicians as a whole, and Dr. Ghaemmaghami seeks, among other relief, equitable remedies with respect to the Unpaid Leave Class as a whole.

133.    Class certification is appropriate under Federal Rule of Civil Procedure 23 (b)(3) because the questions of law or fact common to members of the Unpaid Leave Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

134.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact—whether Dignity did not give class members their PTA or paid sick leave.

135.    Absent a class action, most of the Physicians will remain unaware of their rights and/or find the cost of litigating their claims prohibitive.  Dignity has concealed or misled its Physicians about their rights and those Physicians will remain unaware of their potential claims against Dignity unless court-supervised notice is ordered, and will continue to be harmed by Dignity's illegal practice.

**The Unpaid Wage Class**

136.    Dr. Ghaemmaghami brings this action on behalf of himself and the following **Unpaid Wage Class (hereinafter referred to as "Unpaid Wage Class Members"):** All Physicians who are or were employed by Dignity and who exceeded their wRVU cap in a fiscal year at any time from the earliest that the statute of limitation permits until a class is certified (the "Unpaid Wage Class").

137.    Upon information and belief, Dignity employs, and has employed, at least 100 Unpaid Leave Class Members within any applicable statute of limitations.

138.    Dignity's records will establish the Unpaid Wage Class as well as their numerosity.

14

139.    Common questions of law and fact exist and predominate as to Plaintiff and the Unpaid Wage Class Members, including, without limitation:

> A.    Whether Dignity failed to compensate Unpaid Wage Class Members for certain work;
>
> B.    Whether Dignity owes Unpaid Wage Class Members for unpaid wages, or in the alternative, the minimum wage for unpaid work;
>
> C.    Whether Unpaid Wage Class Members are entitled to injunctive relief;
>
> D.    Whether Dignity's conduct as to the Unpaid Wage Class warrants an award of compensatory damages;
>
> E.    Whether Unpaid Wage Class Members are entitled to an award of attorney's fees.

140.    Dr. Ghaemmaghami has the same interests in this matter as all other members of the class and his claims are typical of those of all members of the class. Dr. Ghaemmaghami and all Unpaid Wage Class Members have been harmed by Dignity's common course of conduct as outlined herein.  The harm to each Unpaid Wage Class Member was caused by Dignity's wrongful conduct.

141.     Dr. Ghaemmaghami is committed to pursuing this action and has retained competent class counsel.  Dr. Ghaemmaghami will fairly and adequately represent the interests of Unpaid Wage Class Members. Neither Dr. Ghaemmaghami nor counsel have any interests adverse to those of other members of the class.

142.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Dignity's actions are generally applicable to the Unpaid Wage Class as a whole, and Dr. Ghaemmaghami seeks, among other relief, equitable remedies with respect to the Unpaid Wage Class as a whole.

143.    Class certification is appropriate under Federal Rule of Civil Procedure 23 (b)(3) because the questions of law or fact common to Unpaid Wage Class Members predominate over any questions affecting only individual members, and a

1  class action is superior to other available methods for fairly and efficiently
2  adjudicating the controversy.

3      144.   Class certification is appropriate under Federal Rule of Civil Procedure
4  23(c)(4) because resolution of a key fact—whether Dignity did not compensate
5  Unpaid Wage Class Members for certain work.

6      145.   Absent a class action, most of the Unpaid Wage Class Members will
7  remain unaware of their rights and/or find the cost litigating their claims prohibitive.
8  Dignity has concealed or misled class members about their rights and those Unpaid
9  Wage Class Members will remain unaware of their potential claims against Dignity
10 unless court-supervised notice is ordered.

## COUNT I

**Violation of Arizona' Paid Sick Time Act**

**(On Behalf of Dr. Ghaemmaghami and the Physicians)**

14     146.   Dr. Ghaemmaghami incorporates the previous paragraphs of his
15 complaint as if set forth fully herein.

16     147.   Dignity is an employer as that term is defined by A.R.S. § 23-371(G).

17     148.   The Paid Sick Leave Statute requires Dignity to allow its employees to
18 accrue earned sick time at a rate of one hour for every 30 hours worked, at minimum.
19 A.R.S. § 23-372.

20     149.   "Earned paid sick time" means the employee is compensated at the
21 same hourly rate "with the same benefits … as the employee normally earns during
22 hours worked …."  A.R.S. § 23-371(D).

23     150.   An employee may use paid sick time for any qualifying reason.  A.R.S.
24 § 373(A)(1).

25     151.   The Paid Sick Leave Statute requires Dignity to carry over accrued, but
26 unused, sick time to the following year, or, alternatively, requires Dignity to "pay an
27 employee for unused earned sick time at the end of the year and provide the

28

JABURG WILK
LAW FIRM

employee with an amount of earned paid sick time that meets or exceeds the requirements of this article that is available for the employee's immediate use at the beginning of the subsequent year." A.R.S. § 23-372(D)(4).

152.    Dignity violated the Paid Sick Leave Statute by not affording Dr. Ghaemmaghami and the Physicians any paid sick leave.

153.    Dignity violated the Paid Sick Leave Statute by failing to carry over or compensate Dr. Ghaemmaghami and the Physicians for any accrued but unused paid sick leave.

154.    Because of these violations, Dignity is liable to Dr. Ghaemmaghami and the Physicians "in an amount not less than the … earned paid sick time …, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time." A.R.S. § 23-364.

155.    Dr. Ghaemmaghami and the Physicians are entitled to recover their attorney's fees and costs pursuant to A.R.S. § 23-364(G).

156.    Dr. Ghaemmaghami and the Physicians have been and continue to be damaged by Dignity's violations of the Arizona Paid Sick Leave Law.

157.    Because Dignity is continuing to violate Dr. Ghaemmaghami's and the Physicians' rights under the Arizona Sick Leave Statute and will continue to do so in the future, Dr. Ghaemmaghami and Physicians also seek injunctive relief, requiring Dignity to provide legally compliant paid sick time.

## COUNT II

### Breach of Contract

### (On Behalf of Dr. Ghaemmaghami and the Physicians)

158.    Dr. Ghaemmaghami incorporates the previous paragraphs of his complaint as if set forth fully herein.

159.    Each Physician is a party to one or more of Dignity's standard employment contracts.

17

1    160.    Dignity's standard employment contracts incorporated by reference the
2    PTA Policy.

3    161.    Dignity breached those contracts by not allowing Dr. Ghaemmaghami
4    and the Physicians to use PTA.

5    162.    As a direct and proximate result of Dignity's breaches, Dr.
6    Ghaemmaghami and the Physicians have suffered financial harm by having to take
7    unpaid leave.

8    163.    Dr. Ghaemmaghami and the Physicians have been and continue to be
9    damaged by Dignity's breaches of the contracts.

10    164.    Dr. Ghaemmaghami and the Physicians are entitled to recover their
11    attorney's fees and costs incurred herein pursuant to A.R.S. §§ 12-341 and 12-
12    341.01.

13    165.    Because Dignity is continuing to breach its contracts with its
14    Physicians and will continue to do so in the future, Dr. Ghaemmaghami and the
15    Physicians also seek injunctive relief, requiring Dignity to provide contractually
16    compliant PTA.

## COUNT III

### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Dr. Ghaemmaghami and the Physicians)

20    166.    Dr. Ghaemmaghami incorporates the previous paragraphs of his
21    complaint as if set forth fully herein.

22    167.    Each Physician is a party to one or more of Dignity's standard
23    employment contracts.

24    168.    Dignity's standard employment contracts incorporated by reference the
25    PTA Policy.

26    169.    Arizona law implies a duty of good faith and fair dealing in all
27    contracts.

28

1    170.   A party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain.

171.   As described above, Dignity representatives claimed that Dr. Ghaemmaghami and the Physicians did not have PTA benefits, or they had unlimited unpaid time off with no prior approval necessary.

172.   But even had Dignity permitted Dr. Ghaemmaghami and the Physicians to use PTA, Dignity's Physician Compensation Manual states that PTA does not count toward the fulfillment of a call shift.

173.   Additionally, Dignity's Physician Compensation Manual states that the Productivity Compensation and 20% holdback may be impacted if use of PTA impacts the number of wRVUs generated.

174.   Dignity breached its duty of good faith and fair dealing by carrying out the PTA Policy in a manner that denies Dr. Ghaemmaghami and the Physicians paid leave, as contemplated in the PTA Policy and employment contracts.

175.   Dr. Ghaemmaghami and the Physicians have been and continue to be damaged by Dignity's breaches of the implied covenant of good faith and fair dealing.

176.   Dr. Ghaemmaghami and the Physicians are entitled to recover their attorney's fees and costs incurred herein pursuant to A.R.S. §§ 12-341 and 12-341.01.

. . .

. . .

. . .

. . .

19

JABURG WILK
LAW FIRM

## COUNT IV

### Violation of the Arizona Wage Act

### (On Behalf of Dr. Ghaemmaghami and the Unpaid Wage Class Members)

177.    Dr. Ghaemmaghami incorporates the previous paragraphs of his complaint as if set forth fully herein.

178.    Under Arizona law, no employer may withhold or divert any portion of an employee's wages.

179.    Dignity's standard employment contracts do not disclose that Dignity imposes a wRVU cap or a total compensation ceiling.

180.    The Physician Compensation Manual, a separate document, states that Dignity will impose a wRVU cap and a total compensation ceiling.

181.    Dr. Ghaemmaghami and Unpaid Wage Class Members hit their wRVU cap before the end of the fiscal year.

182.    Once Dr. Ghaemmaghami and Unpaid Wage Class Members hit their wRVU cap, Dignity would not compensate Dr. Ghaemmaghami and Unpaid Wage Class Members for Clinical Hours.

183.    Dignity required Dr. Ghaemmaghami and Unpaid Wage Class Members to continue working Clinical Hours after hitting their wRVU cap.

184.    Dignity threatened to report any Physician who stopped working clinical hours to the Arizona State Medical Board.

185.    As a result, Dignity did not compensate Dr. Ghaemmaghami and Unpaid Wage Class Members wages due and owing to them.

186.    Pursuant to A.R.S. § 23-355, Dr. Ghaemmaghami and Unpaid Wage Class Members are entitled to a judgment for treble damages on the amount of their unpaid wages.

187.    Pursuant to A.R.S. § 44-1201, Dr. Ghaemmaghami and Unpaid Wage Class Members are entitled to interest on the foregoing amount at the highest legal

1  rate from the first date Dignity first failed to Dr. Ghaemmaghami and Unpaid Wage

2  Class Members their wages until paid in full.

3      188.    Dr. Ghaemmaghami and the Unpaid Wage Class Members have been

4  and continue to be damaged by Dignity's violations of the Arizona Wage Act.

5      189.    Dr. Ghaemmaghami and the Unpaid Wage Class Members are entitled

6  to recover their attorney's fees and costs incurred herein. A.R.S. § 23-364(G).

7      190.    Because Dignity is continuing to violate Dr. Ghaemmaghami's and the

8  Unpaid Wage Class Members' rights and will continue to do so in the future,

9  Dr. Ghaemmaghami and Unpaid Wage Class Members also seek injunctive relief,

10 requiring Dignity to provide legally compliant compensation.

### COUNT V

**Violation of the Arizona Minimum Wage Act**

**(On Behalf of Dr. Ghaemmaghami and Unpaid Wage Class Members)**

191.    Dr. Ghaemmaghami incorporates the previous paragraphs of his complaint as if set forth fully herein.

192.    Dignity's standard employment contracts do not disclose that Dignity imposes a wRVU cap or a total compensation ceiling.

193.    The Physician Compensation Manual, a separate document, states that Dignity will impose a wRVU cap and a total compensation ceiling.

194.    Dr. Ghaemmaghami and Unpaid Wage Class Members hit their wRVU cap before the end of the fiscal year.

195.    Once Dr. Ghaemmaghami and Unpaid Wage Class Members hit their wRVU cap, Dignity would not compensate Dr. Ghaemmaghami and Unpaid Wage Class Members for Clinical Hours.

196.    Dignity required Dr. Ghaemmaghami and Unpaid Wage Class Members to continue working Clinical Hours after hitting their wRVU cap.

197. By not paying Dr. Ghaemmaghami and Unpaid Wage Class Members for Clinical Hours, Dignity did not pay Dr. Ghaemmaghami and Unpaid Wage Class Members the applicable Arizona minimum wage for such work, in violation of A.R.S. § 23-363.

198. Dignity willfully failed to pay or refused to pay Dr. Ghaemmaghami and Unpaid Wage Class Members the mandated minimum wage under the Arizona Minimum Wage Act.

199. Dr. Ghaemmaghami and Unpaid Wage Class Members have been and continue to be damaged by Dignity's violations of the Arizona Minimum Wage Act.

200. Dr. Ghaemmaghami and Unpaid Wage Class Members are entitled to compensatory damages, including liquidated damages pursuant to A.R.S. § 23-364.

201. Plaintiff and Unpaid Wage Class Members are entitled to their attorney's fees and costs incurred herein pursuant to A.R.S. § 23-364.

202. Because Dignity is continuing to violate Dr. Ghaemmaghami's and the Unpaid Wage Class Members' rights and will continue to do so in the future, Dr. Ghaemmaghami and Unpaid Wage Class Members also seek injunctive relief, requiring Dignity to provide legally compliant compensation.

### JURY DEMAND

Dr. Ghaemmaghami demands a trial by jury on all triable issues.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members, prays for relief as follows:

A. For an order certifying this action as a class action on behalf of the proposed Class and Subclasses;

B. For an order appointing Plaintiff as the Representative of the Unpaid Leave Class and the Unpaid Wage Class and an order appointing his counsel as Class Counsel;

22

1    C.    For injunctive relief sufficient to prevent Dignity's future
2    violations of Plaintiff's and class members' rights;

3    D.    For damages related to Dignity's failure to provide paid sick
4    leave;

5    E.    For compensatory damages related to Dignity's failure to
6    provide PTA;

7    F.    For damages for Clinical Hours worked without compensation;

8    G.    For trebled or liquidated damages for unpaid wages or work;

9    H.    For compensatory damages in amount to be proven at trial;

10    I.    For interest provided as provided by law at the maximum legal
11    rate;

12    J.    For punitive damages;

13    K.    For reasonable attorney's fees authorized by statute;

14    L.    For costs of suit incurred herein;

15    M.    For pre- and post-judgment interest, as provided by law; and

16    N.    For such further relief as the Court may deem just and proper.

17
18    DATED this 8th day of January, 2023.

19    **Jaburg & Wilk, P.C.**

20

21    */s/ Alden A. Thomas*
Alden A. Thomas
22    Ian M. Fischer
Michelle L. Hogan
23    Corrinne R. Viola
3200 N. Central Avenue, 20th Floor
24    Phoenix, AZ 85012
*Attorneys for Plaintiff*

25

26

27

28

JABURG WILK
LAW FIRM

23